UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS SCOTT,<br><br>            Petitioner,<br><br>     v.<br><br>JEFF MACOMBER,<br><br>            Respondent. | No.  2:15-cv-1292 KJM AC P<br><br><br>SUPPLEMENTAL FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner seeking habeas relief under 28 U.S.C. § 2254. On review of the previously issued Findings and Recommendations, ECF No. 23, the assigned district judge referred this case back to the undersigned for further consideration of the Batson issue. ECF No. 27. Having reviewed the pertinent legal authority and the state court record in this case, the undersigned resubmits the initial Findings and Recommendations as supplemented herein.

I.      Procedural Posture

The facts of petitioner's underlying criminal case and direct appeal, and the facts related to his habeas claims, have been set forth in the previously issued Findings and Recommendations on the merits of the petition, and need not be repeated here. The undersigned recommended denial of petitioner's claim that his equal protection rights were violated when the trial court failed to follow proper procedures in responding to his motion under Batson v. Kentucky, 476

U.S. 79 (1986). ECF No. 23 at 8-22. The undersigned found first that both the trial court and the California Court of Appeal had unreasonably applied Batson within the meaning of 28 U.S.C. § 2254(d), entitling petitioner to de novo review of the claim in this court. ECF No. 23 at 17-19. The undersigned then conducted de novo review, and found that petitioner had not satisfied his burden of identifying a prima facie case of racial discrimination at Step One of the three-part Batson analysis. Id. at 19-22.[1] A prima facie case was found lacking because, in sum, petitioner had not identified circumstances that raised an inference of racial motivation. Petitioner had presented no evidence regarding the racial composition of the venire, nor statistical data regarding the impact of the two challenged strikes on the composition of the jury. Moreover, several circumstances outweighed any inference of discrimination that might otherwise arise from the bare fact that two African Americans had been excused. Those circumstances were the defense strike of an African American juror who was acceptable to the prosecution, and the several characteristics of prospective jurors P.M. and S.R. that have been recognized by the Ninth Circuit as legitimate and race-neutral bases for peremptory strikes. The undersigned found that petitioner's characterization of P.M. and S.R. as "pro-prosecution" was inconsistent with the record. Id.

After noting petitioner's scant prima facie showing, and before independently evaluating the totality of the circumstances to see whether they raised an inference of racial motivation, the undersigned noted that neither the fact of an all-white jury nor the fact a prospective juror of color is excused is enough, standing alone and out of context, to support an inference of discrimination:

> Even assuming that the disputed strikes resulted in a jury with no African American members, that fact would not create a prima facie case. The Ninth Circuit has noted that a "prosecutor's use of a peremptory strike against the only African-American prospective

---

[1] If a defendant identifies circumstances raising a prima facie case of discrimination, then the burden shifts to the prosecutor to put forward legitimate and race-neutral reasons for the strike(s). If the prosecutor meets this burden at Step Two, the trial court must determine whether the defendant has met his ultimate burden of proving purposeful racial discrimination. See Johnson v. California, 545 U.S. 162, 168 (2005). Accordingly, the Step Three inquiry asks whether the prosecutor's proffered race-neutral reasons were the actual reasons for the strike. Purkett v. Elem, 514 U.S. at 765, 768 (1995). In this case, the state courts failed to follow this sequential process. See ECF No. 23 at 17-19.

> juror is a relevant consideration," but "it does not by itself raise an inference of discrimination." Crittenden v. Ayers, 624 F.3d 943, 955 (9th Cir. 2010); see also Boyd v. Newland, 393 F.3d 1008, 1013 (9th Cir. 2004) ("Even the use of two peremptory strikes against members of a cognizable minority group does not necessarily suffice to constitute a prima facie showing of bias.").

ECF No. 23 at 20.

The undersigned also cited Boyd I, 393 F.3d at 1013, for the proposition that "[e]vidence in the record of objective reasons to strike a juror implies that racial bias did not motivate the prosecutor." ECF No. 23 at 21.

On review of the Findings and Recommendations, the district judge noted these two citations to Boyd and stated as follows:

> The opinion in Boyd was amended on denial of petitions for rehearing and rehearing en banc, see Boyd v. Newland, 455 F.3d 897 (9th Cir. 2006), and the latter opinion was amended and superseded by Boyd v. Newland, 467 F.3d 1139 (9th Cir. 2006). Good cause appearing, this matter is referred back to the assigned magistrate judge for consideration of what effect, if any, the subsequent history of Boyd has on the pending findings and recommendations.

ECF No. 27 at 1-2.

II.  *Boyd v. Newland* and Related *Batson* Jurisprudence

Like the instant case, the Boyd litigation involved Batson's first step: whether the totality of the circumstances surrounding a strike raises an inference of racial discrimination. In Boyd I, a panel of the Ninth Circuit Court of Appeals first rejected the petitioner's arguments that (1) the state courts had applied a legal standard contrary to Batson, and (2) the state courts had unreasonably applied Batson when they found that there was no prima facie case of discrimination. Boyd I, 393 F.3d at 1012-13. The latter discussion was the source of the two citations in the Findings and Recommendations in this case. The Court of Appeal went on to reject Boyd's argument that the California Court of Appeal had violated his rights by denying his requests for a free transcript of the entire voir dire, for purposes of conducting comparative juror analysis. Boyd I, 393 F.3d at 1014-16.

Shortly after this opinion issued, the Supreme Court decided two landmark Batson cases.

In Johnson v. California, 545 U.S. 162 (2005), the Court held that Batson does not require a defendant to demonstrate at Step One that a strike was more likely than not the product of purposeful discrimination, as the California courts had held. Rather, "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson, 545 U.S. at 170. In Miller-El v. Dretke, 545 U.S. 231 (2005) (Miller-El II), the Court used comparative juror analysis to determine whether a prosecutor had treated similar jurors differently on the basis of their race.

The Boyd court then reconsidered its disposition of the case before it, in light of Johnson and Miller-El II. The panel concluded that it had erred on the voir dire transcript issue, and held "that the California appellate courts violated clearly established federal law by denying Petitioner's habeas petition because, without an entire voir dire transcript, those courts could not evaluate the relevant circumstances surrounding the contested strike, as Batson requires." Boyd II, 455 F.3d 897, 900 (9th Cir. 2006). The panel ordered that the federal habeas petition be granted on that basis, without making a determination whether or not petitioner had established a prima face of discrimination. Id. at 909, 910.

In Boyd III, the panel reiterated its Boyd II holding that the state courts' denial of voir dire transcripts and failure to conduct comparative juror analysis on appeal was unreasonable under Batson and progeny, and further noted that this conclusion was consistent with Kesser v. Cambra, 465 F.3d 351 (9th Cir. 2006) (en banc). Boyd III, 467 F.3d 1139, 1151 (9th Cir. 2006), cert. denied, 550 U.S. 933 (2007). The panel modified the terms of remand, instructing the district court to enter "a conditional writ of habeas corpus, ordering [petitioner's] release unless the State provides to him, without charge, a complete voir dire transcript within a reasonable period of time, after which he may renew his Batson claim in the district court." Id. at 1152.

III.    Supplemental Analysis of Petitioner's *Batson* Claim

A. The Principles for Which *Boyd I* Was Cited Remain Good Law

The undersigned erred in citing a portion of Boyd I that was dropped from Boyd II and

4

Boyd III.² However, the cited propositions were not abrogated holdings of Boyd I, but well-established principles of Ninth Circuit Batson jurisprudence.

Boyd I cited Fernandez v. Roe, 286 F.3d 1073, 1078 (9th Cir. 2002), and United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir. 1989), for the proposition that "[e]ven the use of two peremptory strikes against members of a cognizable minority group does not necessarily suffice to constitute a prima facie showing of bias." Boyd I, 393 F.3d at 1013. In Fernandez, the court had noted that "[b]ecause the numbers are so small (and, hence, potentially unreliable), two such challenges, standing alone, may not be sufficient to support an inference of discrimination." 286 F.3d at 1078. As the Ninth Circuit put it in a later case, "the prosecutor's use of a peremptory strike against the only African-American prospective juror is a relevant consideration, although it does not by itself raise an inference of discrimination." Crittenden v. Ayers, 624 F.3d 943, 955 (9th Cir. 2010). In any event, the undersigned did not merely rely on this general principle to find that there was no prima facie case—rather, the court noted that the defense strike of a different African American, a prospective juror who was acceptable to the prosecution, weighed against any inference of bias otherwise arising from the fact that two prosecution strikes were exercised against African Americans. ECF No. 23 at 20.

Boyd I also cited authority for the second position for which it was quoted in the previous Findings and Recommendations:

> Evidence in the record of objective reasons to strike a juror implies that racial bias did not motivate the prosecutor. See Paulino v. Castro, 371 F.3d 1083, 1091-92 (9th Cir. 2004) ("While we may consider whether the record contains entirely plausible reasons, independent of race, why a prosecutor may have exercised peremptories, such reasons have usually helped persuade us that defendant made no prima facie showing where defendant challenged the excusal of just one juror." (emphasis added) (citation and internal quotation marks omitted)); Wade [v. Terhune], 202 F.3d [1190,] 1198 [(9th Cir. 2000)] (noting that "entirely plausible reasons, independent of race," for striking a juror support a finding that the prosecutor did not act based on racial bias). In the circumstances, the state court did not apply federal law

---

² Because the Boyd panel walked back its holding that the petitioner had not established a prima facie case of discrimination, on grounds that the existence *vel non* of a prima facie case could not be determined without review of the voir dire transcript as a whole, the Boyd I discussion of other circumstances relevant to the Step One inquiry became moot.

5

>unreasonably when it held that Petitioner had failed to make a prima facie showing under Batson.

Boyd I, 393 F.3d at 1013.  Paulino and Wade remain good law.

Accordingly, the Findings and Recommendations at ECF No. 23 are corrected to the extent that the above-referenced citations to Fernandez, Chinchilla, Paulino and Wade are substituted for the citations to Boyd I at pages 20 and 21.

B.  Comparative Juror Analysis Does Not Give Rise to a Prima Facie Case

Batson directs courts to consider at Step One the "totality of the relevant facts" and "all relevant circumstances" surrounding the peremptory strike(s).  Batson, 476 U.S. at 94, 96.  Boyd III accordingly instructs that when a petitioner raises a plausible Batson claim, as petitioner has done here, contextual analysis is necessary to determine whether an inference of discrimination arises from the facts and circumstances surrounding the challenged strikes.  Boyd III, 467 F.3d at 1146-47.  Comparative juror analysis is a critical part of such contextual analysis.  Id. at 1148.  Because comparative juror analysis was not previously conducted as part of this court's de novo review at Step One, the undersigned now undertakes that task notwithstanding petitioner's failure to make a comparative juror argument.  The question is whether the prosecutor treated P.M. and S.R. differently than prospective jurors with similar backgrounds who were not African American, giving rise to an inference that the strikes of P.M. and S.R. were racially motivated.  See United States v. Collins, 551 F.3d 914, 922 (9th Cir. 2009) ("An inference of discrimination may arise when two or more potential jurors share the same relevant attributes but the prosecutor has challenged only the minority juror.").  Having carefully reviewed the prospective juror questionnaires and transcripts of jury selection from petitioner's trial,[3] the court finds as follows.

All prospective jurors were questioned about their own and family members' criminal histories: the questionnaires inquired into the matter, and follow-up questions were asked of all prospective jurors who had answered in the affirmative.  P.M. reported that her brother was

---

[3] The questionnaires are found in Lodged Item 7: Aug. CT, volume 2 ("2 Aug. CT").  The transcript of jury selection is found in Lodged Item 18: Reporter's Augmented Transcript on Appeal ("Aug. RT"), volume 1.

serving a sentence of over 100 years for a third strike offense; the trial court considered this to be a legitimate reason to excuse her. 1 RT 82-83 (trial judge's findings), 84 (prosecutor's agreement that this was the basis for the strike). No other prospective juror reported a family member serving a life sentence, and none reported a family member or close friend serving a lengthy prison term. A significant number of prospective and seated jurors had family members with DUI arrests or convictions; some had such convictions themselves. See, e.g., Aug. RT at 81 (Juror No. 7, whose mother had a DUI decades previously), and at 90-91 (Juror No. 9, who had a DUI conviction him/herself). Additionally, several prospective jurors had family members with past arrests or convictions for various other misdemeanors and lesser crimes. One seated juror acknowledged having been arrested 25 years earlier for writing bad checks. Aug. RT at 95-96 (Juror No. 1). None of these matters involved a lengthy prison term, however. For this reason, these jurors are not comparable to P.M. The strike of the only prospective juror with a family member serving a life sentence does not give rise to an inference of racial bias.

One other prospective juror had a family member who had been charged with a major felony and thus was likely facing a lengthy prison sentence: Prospective Juror Campbell, whose cousin had been charged with murder. Aug. RT at 208-209. The cousin's case was pending in Sacramento County at the time of jury selection, id., and so the cousin was presumably in the County Jail at the time, like S.R.'s brother. Like P.M. and S.R., Prospective Juror Campbell stated that he could be a fair and impartial juror and would not be affected by his family member's case. The prosecutor exercised a peremptory challenge against Campbell. Aug. RT at 237. The fact that Campbell was also subjected to a strike weighs against the finding of a prima facie case of discrimination as to P.M. and S.R.

S.R. had a master's degree in social work, and professional experience in both law enforcement and social services contexts. No other prospective juror had a degree in social work or job experience in social services. The seated juror with the most analogous professional experience was Alternate Juror No. 2, a school psychologist. 2 Aug. CT at 14. This juror's work involved special education assessments, Aug. RT at 306-307 & 317, not counseling or services. Alternate Juror No. 2 was the only member of the venire whose occupation was in the field of

psychology, which might be considered adjacent to social work notwithstanding significant differences between the disciplines. Alternate No. 5 was an analyst with the California Department of Health Care Services, who had studied psychology as an undergraduate but had never done clinical work. 2 Aug. CT at 17; Aug. RT at 317. The educational and professional backgrounds of both these seated alternates are sufficiently different from S.R.'s that the prosecutor's failure to strike them does not support a prima facie case of discrimination as to S.R.

Moreover, even if the fields of social work and psychology are sufficiently similar in the abstract to be considered comparable occupations, neither Alternate Juror No. 2 nor Alternate Juror No. 5 had a family member facing serious criminal charges in Sacramento County, where petitioner's trial was taking place, or incarcerated at the Sacramento County Jail at the time of petitioner's trial, while petitioner was housed there. See 2 Aug. Ct at 14 & 17. Accordingly, these two alternates are not similar overall to S.R., and the prosecutor's failure to strike them on grounds of their backgrounds in psychology does not reasonably support an inference of bias as to S.R.

Finally, the trial judge noted that S.R. had "made an excuse" for her brother's criminal conduct, blaming it on drugs. 1 RT 83. Neither of the seated alternate jurors with backgrounds in psychology made similar statements. Only one other prospective juror expressed sympathy for a relative's substance abuse problem: prospective juror Burgos, whose nephew had struggled with addiction. Aug. RT at 233. This juror was excused for cause, because sympathy for the nephew might affect her judgment. Aug. RT 234. Accordingly, comparative juror analysis does not support a prima facie case of discrimination against S.R. related to potential sympathy for drug users.

### C. The Totality of the Relevant Facts Does Not Support an Inference of Purposeful Discrimination

The undersigned previously found that petitioner had not met his burden of identifying circumstances that support an inference of racial discrimination at Batson's Step One. ECF No. 23 at 22. Having now independently reviewed all the juror questionnaires and the entire voir dire transcript, the court finds that comparison of P.M. and S.R. with the seated jurors, and

8

comparison of the questions asked of P.M. and S.R. with the questions asked of all other prospective jurors questioned on voir dire, does not raise an inference of purposeful discrimination. Accordingly, for the reasons stated in the previous Findings and Recommendations as supplemented by the comparative juror analysis set forth above, the undersigned finds that the record does not support a prima facie case of discrimination.

### D. Even Assuming A Prima Facie Case, Petitioner Has Not Established Purposeful Discrimination at Step Three

Assuming arguendo that the exercise of peremptory strikes against two African Americans is enough to generate a prima facie case,[4] the question becomes whether the race neutral reasons offered by the prosecutor were her actual reasons for the strikes, or whether race was the real motivation or a substantial motivating factor in the decision. See Green v. Lamarque, 532 F.3d 1028, 1030 (9th Cir. 2008); Cook v. Lamarque, 593 F.3d 810, 815 (9th Cir. 2010).[5] The ultimate question, on which the petitioner bears the burden of persuasion, is whether the strike was the result of purposeful racial discrimination. Purkett v. Elem, 514 U.S. at 765, 768 (1995). The court "must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Batson, 476 U.S. at 93 (internal quotation marks omitted). Such evidence may include statistical data, evidence of prosecutorial jury selection practices, statements made by the prosecutor regarding jury selection strategy or regarding racial issues generally, comparative juror analysis, and any other facts and circumstances relevant to intent. See Miller-El II, 545 U.S. at 240-241, 253, 263-264; Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) (en banc). Because the state court record in this case includes the prosecutor's professed race-neutral reasons for her strikes, the questionnaires of all members of the venire, and transcripts of

---

[4] See Chinchilla, 874 F.2d at 698 n.5 ("However, although the striking of one or two members of the same racial group may not always constitute a prima facie case, it is preferable for the court to err on the side of the defendant's rights to a fair and impartial jury.").

[5] The "substantial motivating factor" test comes into play where the record demonstrates that the prosecutor was motivated both by legitimate race-neutral concerns and by racial bias. Cook, supra. This is not such a case. As explained more fully above and below, the record in this case does not support a finding that racial bias affected the prosecutor's exercise of peremptory challenges, either as the sole factor or as one of several motivating factors.

1   the entire voir dire, no evidentiary hearing is needed in order to conduct this inquiry.[6]  See

2   Crittenden v. Chappell, 804 F.3d 998 (9th Cir. 2015) (affirming district court's disposition of

3   Batson claim, on de novo review because state court determination not entitled to AEDPA

4   deference, on the basis of the state court record).

5         Here, petitioner has never proffered statistical evidence nor extrinsic evidence of racially

6   discriminatory attitudes or practices on the part of the prosecutor or her office.  Cf. Miller-El II,

7   supra.  The trial record itself contains no statements or comments by the prosecutor that reflect

8   problematic racial attitudes.  Cf. Kesser, 465 F.3d at 357 (purposeful discrimination evidenced by

9   racially biased statements of prosecutor).  Accordingly, there is no affirmative evidence of

10  discriminatory attitudes that may have infected jury selection.

11        Even when a prosecutor's racial biases are not explicit, however, they can manifest in the

12  differential treatment of jurors from different racial groups.  Accordingly, comparative juror

13  analysis is the primary method for identifying facially race-neutral reasons for strikes that are

14  actually pretexts for discrimination.  "If a prosecutor's proffered reason for striking a black

15  panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is

16  evidence tending to prove purposeful discrimination to be considered at Batson's third step."

17  Miller-El II, 545 U.S. at 241.

18        The comparative juror analysis set forth above in relation to Step One applies with equal

19  force at Step Three.  The prosecutor did not question P.M. or S.R. differently than she questioned

20  other prospective jurors, nor did she overlook in jurors from other racial groups the same

21  characteristics that were proffered as reasons for her strikes.  Where no seated juror possessed the

22  trait that the prosecutor identified as the reason for a strike, comparative analysis supports the

23  justification proffered.  Cook, 593 F.3d at 818.  Here, no seated juror had a relative serving a life

24  sentence, like P.M., or a family member currently in the Sacramento County Jail, like S.R.  No

25  seated juror had a background in social work like S.R., or commented about the role that drug

26  abuse can play in criminal conduct, as she did.[7]  As explained above, the differences between S.R.

---

[6] Petitioner has made no evidentiary proffer beyond the state court record.

[7] Occupation can be a legitimate basis for a peremptory strike.  See Jamerson v. Runnels, 713

10

1  and Alternate Juror No. 2, a school psychologist, are greater than their arguable similarity of
2  profession. Where differences are greater than similarities, comparative juror analysis does not
3  support a finding of discrimination. See, e.g., Murray v. Schriro, 745 F.3d 984, 1008 (9th Cir.
4  2014). Because no non-Black jurors comparable to P.M. and S.R. were accepted by the
5  prosecution, there is no difference in treatment that juror race might explain. Having reviewed
6  the questionnaires and voir dire transcript, the undersigned finds no disparities that indicate
7  pretext or undermine the prosecutor's justifications for the challenged strikes.

8      The record is not only devoid of evidence that the prosecutor purposefully discriminated,
9  it includes circumstances indicative of race-neutrality. As noted above regarding Step One, the
10 prosecutor struck a non-African American juror (Mr. Campbell) whose cousin was in the county
11 jail facing a homicide charge. The strike of Mr. Campbell suggests that the prosecutor was
12 striking, without regard to race, prospective jurors with family members incarcerated at
13 Sacramento County Jail and being prosecuted by the District Attorney's Office at the time of
14 petitioner's trial (like S.R.), and those with a family member facing or serving a lengthy felony
15 sentence (like P.M.). Campbell, S.R. and P.M. were the only prospective jurors who presented
16 these concerns, and all three were peremptorily challenged by the prosecutor.

17     Another relevant fact is that the prosecutor was willing to accept a third prospective
18 African American juror, who had no family members with serious criminal histories. This juror,
19 Mr. Cole, was struck by the defense. See 2 Aug. CT at 42 (Cole questionnaire); 1 Aug. RT at 211
20 (Cole voir dire, discussing son's light rail infraction); id. at 236 (defense strike of Cole); 1 RT at
21 84 (prosecutor stating Cole was "perfectly suited for this jury" and "would have been perfectly
22 acceptable to the People"). The prosecutor's willingness to accept Mr. Cole weighs against a
23 finding that she purposefully discriminated on the basis of race.

24     For all these reasons, the undersigned finds that even if a prima facie case of
25 discrimination exists or is assumed, petitioner has not met his burden of demonstrating that the

---

F.3d 1218, 1235 (9th Cir. 2013), cert. denied, 571 U.S. 1206 (2014). Concern that a juror might have reason to sympathize or identify with the defendant, regardless of whether the identifying feature relates to the merits of the case, is also a permissible basis. See Rice v. Collins, 546 U.S. 333, 341 (2006); Williams v. Rhoades, 354 F.3d 1101, 1109-10 (9th Cir. 2004)

strikes were racially motivated.  Racial discrimination in jury selection is odious and must never be tolerated—but there is no evidence of it here.

    IV.    <u>Conclusion</u>

For the reasons explained above, petitioner's <u>Batson</u> claim fails on de novo review.  The Findings and Recommendations at ECF No. 23 are HEREBY RESUBMITTED AS SUPPLEMENTED herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> 28 U.S.C. § 2253(c)(2).

DATED: May 29, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE